RECEIVED
JUN 25 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LAWRENCE RICKS,<br>    Plaintiff | CIVIL ACTION<br>SECTION "P"<br>NO. 1:12-cv-00349 |
| VERSUS | |
| CITY OF ALEXANDRIA, et al.,<br>    Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983 and Louisiana state law by plaintiff Lawrence Ricks ("Ricks") on February 3, 2012. Ricks, the father of Robert Ephraim Ricks ("Robert"), deceased, is claiming wrongful death and survival actions, as well Section 1983 claims for deprivation of his right to a familial relationship with the decedent, use of excessive force, assault and battery, denial of medical care, and a products liability claim.

Ricks alleges in his complaint that, on February 5, 2011, Maxine Jones called 911 for assistance because her grandson, Robert, was sweating and shaking very badly. Robert had a history of bipolar disorder and schizophrenia. Ricks alleges that Acadian Ambulance Service and the Alexandria Fire Department responded to the call and noted Robert was diaphoretic with dilated pupils, but he refused medical treatment and retreated to a backroom in the house, where he appeared to be agitated and restless but not

combative. Ricks alleges the Alexandria Police Department was called by Acadian Ambulance, and officers entered the home and tried to talk Robert into going to the hospital; Robert was very restless. Ricks alleges that Maxine Jones convinced Robert to go to the hospital, but when she said she could not go with him, he grabbed her and "allegedly" fell on her. Ricks alleges Robert Ricks was then handcuffed and led to a patrol car, where he sat down but refused to put his feet in the car. Ricks alleges Officer Kirk performed two knee strikes to Robert's common peroneal, to no avail, so Officer Joffrion tasered Ricks in his right thigh area; Robert then placed his feet in the car and was transported to the Rapides Parish jail. Ricks alleges in his complaint that, upon arrival, Robert exited the car escorted by two sheriff's deputies, but a struggle broke out in which Robert was alleged to have kicked and yelled; four deputies then carried Ricks into the elevator and up to the jail. Ricks alleges that Robert was held down on the ground until the isolation cell was available, then picked up and another struggle started; Officer Mark Wood kicked Robert in the shoulder area to push him back to the ground, then held Robert's shoulders. Ricks alleges that, at some point, Robert was tasered in the back by Officer Brunet, then moved toward the cell, but as he was moved his body went limp; Robert was placed in the cell and observed not to be breathing.

    The named defendants are the City of Alexandria, Mayor Jacques

Roy, the Alexandria Police Department, and Danny Joffrion, Deidra Allen, Marcus Kirk, and William Carmouche, individually and in their official capacities, Rapides Parish Sheriff Charles F. Wagner, Jr., the Rapides Parish Sheriff's Office, and Jason Walker, James Brunet, and Mark Wood, individually and in their official capacities, Acadian Ambulance and its insurer, the Alexandria Fire Department, Silton Metoyer, and Taser International, Inc.[1]

For relief, Ricks asks for monetary damages, including punitive and exemplary damages, costs, attorney fees, and expenses. Ricks also asks for a jury trial.

Acadian Ambulance filed a motion to dismiss for failure to state a claim on which relief may be granted pursuant to Fed.R.Civ.P. rule 12. Ricks filed a brief in opposition to the motion (Doc. 13), to which Acadian Ambulance replied (Doc. 14).

The Rapides Parish Sheriff's Office and Sheriff Wagner also filed a motion to dismiss pursuant to Fed.R.Civ.P. rule 12(b)(6). Ricks filed a brief in opposition to that motion (Doc. 15), to which the defendants replied (Doc. 16).

Defendants' motions to dismiss are now before the court for disposition.

Law and Analysis

Motion to Dismiss

---

[1] Ricks voluntarily dismissed the Alexandria Fire Department and the Alexandria Police Department, but the City of Alexandria remains as a defendant (Docs. 17, 18).

A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted. <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th.Cir. 1988); <u>Doe v. U.S. Dept. of Justice</u>, 753 F.2d 1092, 1101 (D.C.Cir. 1985). For the purposes of such a motion, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. <u>Doe</u>, 753 F.2d at 1101. A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); <u>Doe</u>, 753 F.2d at 1102. On a motion to dismiss, it is presumed that general allegations embrace the specific facts that are necessary to support the claim. <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

<u>Rapides Parish Sheriff's Office</u>

The Rapides Parish Sheriff's Office filed a motion to dismiss

4

Ricks' action against it because it is not a legal entity capable of being sued.

Parish Sheriff's Offices are not legal entities capable of being sued. The State of Louisiana grants no such legal status to any Parish Sheriff's Office. Thus, the Rapides Parish Sheriff's Office is not a "person" capable of being sued under Section 1983. <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D.La. 1988); <u>Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dept.</u>, 350 So.2d 236, 238 (La. App. 3d Cir.), writ den., 352 So. 2d 235 (La. 1977). Also, <u>Riley v. Evangeline Parish Police Jury</u>, 630 So.2d 1314, 1320 (La. App. 3d Cir. 1993), rev'd in part on other grounds, 637 So.2d 395 (La. 1994); <u>Ferguson v. Stephens</u>, 623 So.2d 711, 714-15 (La. App. 4th Cir. 1993); <u>Garner v. Avoyelles Parish Sheriff's Dept.</u>, 511 So.2d 8 n.1 (La. App. 3d Cir. 1987).

Therefore, Ricks' Section 1983 action against the Rapides Parish Sheriff's Office should be dismissed with prejudice.

<u>Punitive Damages Claim Against Sheriff Wagner in Official Capacity</u>

Rapides Parish Sheriff Wagner filed a motion to dismiss Ricks' claim for punitive damages. Wagner's motion concerns only the claim for punitive damages against him in his official capacity.

La. R.S. 13:5901 to 13:5911 empower the sheriff to raise revenues to finance his facilities and services through the creation of a continuing legal entity in each parish known as a law enforcement district, whose corporate existence survives the term

5

of office of any individual sheriff. La. R.S. 13:5912 specifically creates the Rapides Parish Law Enforcement District.

Therefore, a suit against Sheriff Wagner in his official capacity is actually a suit against the Rapides Parish Law Enforcement District. See <u>Law Enforcement District of Parish of Avoyelles v. Avoyelles Parish Police Jury</u>, 1998-996 (La.App. 3d Cir.2/3/99), 736 So.2d 842, writ den., 1999-635 (La.4/23/99), 742 So.2d 892 (a Law Enforcement District is a taxing entity and, for all practical purposes, a Law Enforcement District is the Sheriff); La. R.S. 33:9001. See also, <u>Denham Springs Economic Development Dist. v. All</u>, 2004-1674 (La.2/4/05), 894 So.2d 325, 332; <u>Wood v. Fontenot</u>, 2004-1174 (La.App. 3d Cir.10/20/04), 885 SO.2d 668, writ den., 2004-2677 (La. 11/4/04), 885 So.2d 1117; <u>Lewis v. Jefferson Parish Sheriff's Office</u>, 01-257 (La. App. 5th Cir. 9/25/01), 798 So.2d 249, 251; <u>City of Shreveport v. Caddo Parish</u>, 27,519 (La. App. 2 Cir. 6/23/95), 658 So.2d 786, 794-795. As argued by Wagner, punitive damages may not be awarded against him in his official capacity, since punitive damages may not be awarded against a government entity, in this case, the law enforcement district. See <u>Stern v. Hinds Cty., Miss.</u>, 436 Fed. Appx. 381 (5th Cir. 2011), citing <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 266-267, 101 S.Ct. 2748, 2759-2760 (1981)(punitive damages are not intended to compensate the injured party, but rather to punish the tortfeasor; an award of punitive damages against a government

entity "punishes" only the taxpayers, who took no part in the commission of the tort).

Therefore, Wagner's motion to dismiss Ricks' claim for punitive damages against him in his official capacity should be granted.

Individual Capacity Suit Against Sheriff Wagner

Sheriff Wagner also contends Ricks has not stated a claim against him in his individual capacity.

Ricks' claims against Sheriff Wagner appear to be for selecting, retaining, and assigning employees with demonstrable propensities for excessive force, violence, negligence, and other misconduct, failing to adequately train, supervise and control employees in the use of tasers, failing to adequately discipline officers involved in misconduct, condoning and encouraging officers in the belief they can violate civil and other rights with impunity, and ordering, authorizing, acquiescing in, tolerating, permitting or maintaining customs and usages which permit officers to engage in violations of constitutional rights, and also contends that such violations constitute a pattern of conduct.

However, the doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously

liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443 (1993); Thompkins, 828 F.2d at 303.

Under Louisiana law, the sheriff is a final policymaker. Craig v. St. Martin Parish Sheriff, 861 F.Supp. 1290, 1300 (W.D.La. 1994), citing La. Const. Art. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish."). Also, McNeese v. State of Louisiana, 2006 WL 1751055 (W.D.La. 2006). Ricks broadly alleges that Sheriff Wager implemented policies and condoned or encouraged customs which causally resulted in Robert Ricks' death and Ricks' loss. Assuming, for purposes of this motion to dismiss, that Ricks' general allegations are true and that they embrace the specific facts necessary to prove his claims, Ricks has stated Section 1983 claims against Sheriff Wagner in his individual capacity.

Therefore, Sheriff Wagner's motion to dismiss should be denied as to the claims against him in his individual capacity.

Acadian Ambulance Service, Inc.

Acadian Ambulance Service, Inc. filed motion to dismiss Ricks' claims against it pursuant to Fed.R.Civ.P. rule 12(b). First,

8

Acadian Ambulance Service notes that it is a private medical transportation company doing business in the State of Louisiana. Acadian Ambulance further argues that Ricks' state law medical malpractice claim should be dismissed as premature because it has not been presented to a medical review panel.

1.

Ricks alleged a Section 1983 claim against Acadian Ambulance by alleging that Acadian Ambulance was deliberately indifferent to Robert's serious medical needs, resulting in Robert's death and injury to Ricks.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982). Purely private conduct, no matter how wrongful, is not within the protective orbit of Section 1983. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842 (1948).

The traditional definition of acting under color of state law requires that the defendants in a §1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. To

constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor. West v. Atkins, 487 U.S. 42, 47, 108 S.Ct. 2250, 2254 (1988). A plaintiff may also prove liability by showing the private person engaged in a conspiracy with a state actor to violate his constitutional rights. To be actionable, the private and public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. The plaintiff must allege specific facts to show an agreement. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994); Gray v. Taser Intern., Inc., 2012 wl 1329119 (W.D.La. 2012).

Ricks contends that Acadian Ambulance, and other defendants, were deliberately indifferent to Roberts' serious medical needs by failing to provide Robert with necessary medical care, resulting in his death. However, Ricks admits in his complaint that Acadian Ambulance Service, Inc. is a private company. Moreover, Ricks has not alleged that Acadian Ambulance Service, Inc. conspired with a state actor to deprive Robert and Ricks of their constitutional rights, or to otherwise show that the conduct of Acadian Ambulance Service, Inc. in this matter was attributable to the state. Therefore, Ricks' Section 1983 action against Acadian Ambulance should be dismissed because it is not a "state actor."

2.

Acadian Ambulance argues that Ricks' claim against it amounts to an action for medical malpractice, which Ricks has not presented to a medical review panel, as required by the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41.[2]

Ricks' complaint states that Acadian Ambulance responded to the 911 call and noted Robert was diaphoretic with dilated pupils, but that he refused medical treatment and retreated to a back room of the house. Ricks' complaint further alleges that the Alexandria Police Department was dispatched by Acadian Ambulance. Ricks alleges that Acadian Ambulance was negligent in failing to exercise due care in dealing with Robert and caring for Roberts' medical needs, and that their negligence was a proximate cause of his death. However, Ricks contends in his brief (Doc. 14) that his claim against Acadian Ambulance involves the medical decision by Acadian to not transport Robert after they had been engaged in medical treatment of him. Ricks contends the "medical decision" not to transport Robert was substandard health care.

Ricks argues that La.R.S. 40:1231, emergency health services, does not define "ambulance" or "ambulance service" as a health care provider, so Acadian Ambulance does not fall within the provisions of the Louisiana Medical Malpractice Act. However, the definition

---

[2] Ambulance companies are listed as a medical provider in the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41(A)(1), (10).

11

of "health care provider" in the Louisiana Medical Malpractice Act specifically includes "ambulance service," in La.R.S. 40:1299.41(A)(10). Therefore, Acadian Ambulance is covered under the Louisiana Medical Malpractice Act.

Acadian Ambulance argues the facts alleged by Ricks meet the definition of a "tort" covered by the Louisiana Medical Malpractice Act, in La.R.S. 40:1299.31(A)(8)("any unintentional tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient, including failure to render services timely and the handling of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions in the training or supervision of health care providers").

It is the nature of the act complained of, and not the status of Acadian Ambulance as a health care provider, that is determinative of the issue of whether Ricks has alleged a health care action. Acadian Ambulance's status as a qualified health care provider does not mean that every claim against it is covered by the Louisiana Medical Malpractice Act. Strict construction of the Louisiana Medical Malpractice Act requires that its limitations on liability apply only to claims of negligence by the health care provider in the provision of "health care" or "professional services" to a patient. <u>Shiro v. Acadian Ambulance Service, Inc.</u>, 2007-CA-0519 (La. App. 4th Cir. 11/9/07), 970 So.2d 677, writ den.,

2008 C-0084, 2007-C-2386 (La. 3/7/08) 977 So.2d 916, 917, quoting Robinson v. Allen Parish Police Jury, 05-0394 (La. App. 3d Cir. 12/30/05), 918 So.2d 535, writ den., 2006-C-0233 (La. 4/24/06), 926 So.2d 552.

The Louisiana Medical Malpractice Act defines "health care" as "an act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement," La.R.S. 40:1299.41(A)(9). An ambulance service is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession in the same community or locality, and also to use reasonable care, diligence, and judgment. Alphonse v. Acadian Ambulance Services, Inc., 2002 CA 0773, 0774, 0775, 0776 (La. App. 1st Cir. 3/28/03), 844 So.2d 294, 299, writ den., 2003-C-1086 (La. 6/20/03), 847 So.2d 1240; Gray, 2012 wl 1329119 at *5.

Ricks' allegations clearly fall within the scope of the Louisiana Medical Malpractice Act. Ricks alleges negligence (a tort) by Acadian Ambulance (a health care provider) for its medical decision to not take Robert Ricks to the hospital (health care).

Since the Louisiana Medical Malpractice Act applies to Ricks' claim against Acadian Ambulance, Acadian Ambulance is entitled to have Ricks' claims reviewed by a medical review panel prior to Ricks filing suit, in accordance with La. R.S. 40:1299.47 A.(1) and

1299.47 B.(1)(a)(I). Compare, <u>Boudoin v. St. Charles Parish Hosp.</u>, 2008 wl 269026 (E.D.La. 2008); <u>Barraza v. Scheppegrell</u>, 525 So.2d 1187, 1188 (La.App 5th Cir. 1988).

Therefore, Ricks' complaint against Acadian Ambulance should be dismissed without prejudice for prematurity.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Sheriff Wagner's motion to dismiss be GRANTED IN PART and that Ricks' action against the "Rapides Parish Sheriff's Office" be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Sheriff Wagner's motion to dismiss be GRANTED IN PART, and that Ricks' action for punitive damages against Sheriff Wagner in his official capacity be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Sheriff Wagner's motion to dismiss Ricks' action against Sheriff Wagner in his individual capacity be DENIED.

IT IS FURTHER RECOMMENDED that Acadian Ambulance Service, Inc.'s motion to dismiss be GRANTED, that Ricks' Section 1983 action against Acadian Ambulance be DISMISSED WITH PREJUDICE, and that Ricks' medical malpractice claim against Acadian Ambulance be DISMISSED WITHOUT PREJUDICE AS PREMATURE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from

service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 22nd day of June 2012.

```
                              JAMES D. KIRK
                     UNITED STATES MAGISTRATE JUDGE
```